UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JASON ZAFRIN,<br>  Plaintiff, | : | CASE NO. 3:22-cv-1339 (KAD) |
| | : | |
| v. | : | |
| | : | |
| DEPARTMENT OF CORRECTIONS,<br>  Defendant. | : | DECEMBER 14, 2023 |
| | : | |

<u>**MEMORANDUM OF DECISION**</u>
RE: DEFENDANTS' MOTION TO DIMISS, ECF NO. 33

Kari A. Dooley, United States District Judge:

In this civil rights action, *pro se* Plaintiff Jason Zafrin, a sentenced inmate housed at the Department of Correction ("DOC"), brings claims under 42 U.S.C. § 1983 for violation of his Eighth Amendment rights arising out of alleged deliberate indifference to his serious neurological condition and therapy needs against Bridgeport Correctional Center ("BCC") Counselor Kelly, Cheshire Correctional Institution ("CCI") Counselor Gargano, Osborn Correctional Institution ("OCI") Correction Officer Feldott, Counselor Torres, Counselor Suarez, and Dr. Thurber. Initial Review Order ("IRO"), ECF No. 19.

Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Defendants' motion to dismiss is GRANTED.

**STANDARD OF REVIEW**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows

1

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F. 3d 692, 699 (2d Cir. 2010).

After initial review, the Court permitted Zafrin to proceed on his claims of deliberate medical indifference (1) against BCC Counselor Kelly, CCI Counselor Gargano, and OCI Counselors Torres and Suarez for failing to convey information about his neurological and medical needs; (2) against OCI Officer Feldott for failing to let him see medical staff despite reporting that he felt lightheaded and disoriented; and (3) against Dr. Thurber for failing to provide him with adequate medical treatment. IRO at 4-7, ECF No. 16.[1]

---

[1] Zafrin's amended complaint alleged that he was housed at BCC in 2021 prior to his transfer to Cheshire Correctional Institution, where he remained until May 26, 2021. Am. Compl. at 4, ECF No. 14. However, Defendants submit as Exhibit H the DOC record of Zafrin's movements while within its custody. Defs.' Ex. H, ECF No. 33-10. It reflects that Zafrin was incarcerated as a pretrial detainee within DOC from December 13 to December 18, 2018; was not readmitted to DOC at BCC until the date of his sentencing on February 4, 2022; and was thereafter transferred to Cheshire Correctional Institution, where he remained until May 26, 2022. *Id*. It is clear therefore that Zafrin's reference to his 2021 DOC custody was a misstatement. Insofar as Zafrin was a sentenced prisoner during the relevant time period, his claims are analyzed under the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29–35, 33 n.9 (2d Cir. 2017) (claims alleging deliberate indifference to an inmate's health are analyzed under the Due Process Clause of the Fourteenth Amendment when brought by pretrial detainees, but are analyzed under the cruel and unusual punishment clause of the Eighth Amendment when brought by a sentenced prisoner).

**DISCUSSION**

Defendants argue (1) that Zafrin's constitutional claims arising from his alleged medical deprivations are barred under collateral estoppel as litigated in a prior state habeas action, *Zafrin v. Commissioner of Correction*, TSR-CV22-5001310-S; and (2) that Zafrin's amended complaint fails to state any plausible Eighth Amendment claims against custody staff.[2]

**Collateral Estoppel**

The doctrine of issue preclusion, or collateral estoppel, precludes relitigation of a specific issue that has been litigated in a prior action, which can include a prior habeas corpus action. *See Kulak v. City of New York,* 88 F.3d 63, 71–72 (2d Cir.1996) (applying collateral estoppel to bar relitigation in a federal section 1983 action of issues previously litigated in a state habeas proceeding). A district court must apply the preclusion law of the rendering state when determining the preclusive effect of a state court judgment. *See id.*. Thus, whether collateral estoppel bars Zafrin's claim is governed by Connecticut law. *Hoblock v. Albany County Bd. of Elections,* 422 F.3d 77, 93 (2d Cir. 2005).

Under Connecticut law, to be subject to collateral estoppel, an issue must have been: (1) "fully and fairly litigated," (2) "actually decided," (3) "necessary to the judgment," and (4) "identical" to the issue decided in the first action. *Carnemolla v. Walsh,* 75 Conn.App. 319, 325 (2003) (quotation omitted). In addition, Connecticut has abandoned the rule of mutuality, meaning that even parties who were not actually adverse to one another in the prior proceeding may nonetheless assert collateral estoppel. *Aetna Cas. & Sur. Co. v. Jones,* 220 Conn. 285, 302 (1991).

---

[2] A motion to dismiss invoking collateral estoppel is properly brought under Rule 12(b)(6). *Adams v. Town of Clarkstown Police Dep't*, No. 21-CV-11062 (CS), 2023 WL 1109647, at *5 (S.D.N.Y. Jan. 30, 2023) (citation omitted).

Defendants maintain that Zafrin's medical indifference claims in the instant matter have already been fully and fairly litigated and resolved in his state habeas matter.

Because an issue that is sought to be estopped must be identical to an issue decided in the prior proceeding, the Court "must determine what facts were necessarily determined in the first trial, and must then assess whether the party is attempting to relitigate those facts in the second proceeding." *Gladstein v. Goldfield*, No. 3:18-CV-00926 (VAB), 2021 WL 2037799, at *2 (D. Conn. May 21, 2021) (citing *Ventres v. Goodspeed Airport, LLC*, 301 Conn. 194, 206 (2011)) (internal citations and alterations omitted). Accordingly, the Court considers the evidence presented and issues determined in Zafrin's prior state habeas matter.

Habeas Proceeding[3]

In his state habeas action TSR-CV22-5001310-S, Zafrin complained that the doctors at DOC facilities—including BCC, CCI and OCI—did not have the resources to treat his Traumatic Brain Injury ("TBI"), seizures, and "physical ailments" and could not "help" him. Defs.' Ex. B at 4, ECF No. 33-4. Specifically, he alleged:

> I was told by the medical doctors at Bridgeport, Cheshire, Carl Robinson and Osborn that they do not have the resources or facilities to treat my 3 TBIs, seizures, physical ailments, and that they cannot help me. … The facts are that I need continuous treatments from neurology, TBI doctor, epilepsy doctor, and physical, occupational, memory/speech therapy for the rest of my life. All of the doctors at the DOC have said that they cannot do anything for me or my disabilities.

*Id.* In a subsequent motion requesting the superior court to grant his petition and release him from custody, Zafrin explained:

---

[3] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The Court has reviewed and takes judicial notice of the publicly available superior court docket in the habeas proceeding. *See* https://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=TSRCV225001310S.

4

> For staters, I have submitted a total of twenty four inmate request forms seeking medical care in the form of neurological, Traumatic Brain Injury, and Epilepsy specialists. In addition to physical occupational, speech/memory, acupuncture and mental health therapies three times a week. Not to mention the fact that my family has personally reached out to Coun[s]elor Kelly at Bridgeport Correctional, Coun[s]elor Gargano at Cheshire Correctional, the Coun[s]elor Supervisor at Carl Robinson, and Coun[s]elor Torres and Suarez here at Osborn. Informing all of them of the medical issues I suffer from, which include a Traumatic Brain Injury, Seizures, the feeling of being drunk without the alcohol, short term memory loss, and a[]version to light and noise. In addition to at times not knowing who or where I am, why I am where I am, blackouts, and dementia type episodes.

Defs.' ex. C at 2, ECF No. 33-5.

Zafrin later filed a motion to amend and add additional information about Officer Feldott's conduct to refuse his request to see medical staff after he reported feeling dizzy, lightheaded, and drunk. Defs.' Ex. D, ECF No. 33-6. The superior court judge rejected this motion as unclear and procedurally improper but afforded Zafrin leave to file a proper pleading. Defs.' Ex. A at 2-3, ECF No. 33-3. The docket shows Zafrin did not refile this motion. *See id.*

On June 7, 2023, the state court held a habeas trial, at which time the court received medical records and heard oral testimony. *See* Defs.' Ex. G, Trial Transcript, ECF No. 33-9. Zafrin gave direct testimony about his neurological symptoms and medical care at DOC facilities after 2022. *Id.* at 7-11. He testified that he saw Dr. Thurber numerous times and that she tried to help him as best she could but indicated that she could not do so. *Id.* at 7-8, 13-14. He explained that he had been provided with an EEG to test for seizure activity; in December 2022, he saw Dr. Garcia, a neurological specialist who said she could not do anything for his concussion symptoms; and he had a pending referral from Dr. Garcia to see a TBI specialist for follow-up care. *Id.* at 7-10, 15-16.

On cross examination, Zafrin admitted that he had been provided with a brain MRI in October 2022; visited a neurological specialist in December 2022; had diagnostic testing, including

5

an EEG and various labs on December 23, 2022; had another EEG on February 22, 2023; had a pending request for an MRI of his cervical spine; and was prescribed nerve blocking and seizure medications that he refused to take at times. *Id.* at 19-22. He later agreed that DOC was providing him with medical treatment, but he disagreed with the kind of treatment he was provided as he believed they were not addressing his concussion issues. *Id.* at 23.

After Zafrin concluded his case, the habeas court released Dr. Thurber whom Zafrin had subpoenaed but had not called to testify. *Id.* at 24. Dr. Freston, DOC Acting Regional Medical Director, later testified as a witness for the respondent on direct examination that Zafrin had received appropriate medical care for his medical conditions. *Id.* at 25-26. On cross examination by Zafrin, Dr. Freston answered that he would recommend the same treatments for Zafrin that had been offered at DOC, that he could not predict whether Zafrin's conditions could be cured, and that he understood TBI was not a curable condition. *Id.* at 28. Zafrin stated that three doctors he had seen prior to his DOC custody had also indicated that his symptoms were not curable. *Id.* at 29.

> The habeas court issued its oral ruling denying Zafrin's habeas petition as follows:
>
> Given the evidence that has been presented here, the petitioner complains of TBI or a concussion-type syndrome that began prior to his entry into the Department of Corrections. He admits having seen a neurologist, having had an MRI, having seen other doctors on numerous occasions. He admits the Department of Corrections is providing him with medications, however, admittedly refuses or fails to take some of that.
>
> The standard that the Department of Corrections is held to is not perfect medical care and it is not the requirement that they cure every ailment or condition that an inmate might suffer. The condition requires that they not engage in reckless disregard of things that pose a significant and serious risk to the health and safety of the inmate. From this petitioner's own testimony and own admissions, the Department of Corrections has *provided him with care that meets the constitutional standard*, frankly meets the expectations of other doctors that he now admits told him before he came into the Department of Corrections that many

of the symptoms he was feeling were unlikely to be able to be cured potentially except with time.

*Id.* at 32 (emphasis added.). Accordingly, the habeas court denied the petition for habeas relief because Zafrin had failed to establish a violation of his Eighth Amendment rights arising out of the alleged failure to provide "him with proper medical care."

Zafrin's Eighth Amendment Claims Pursuant to Section 1983

In his amended section 1983 complaint, Zafrin alleged Eighth Amendment medical indifference based on DOC's failure to provide him "with neurological or therapeutic care [he] need[s]." Am. Compl. at 8. For Eighth Amendment claims based on lack of medical care, Zafrin is required to prove that "(1) objectively, the alleged deprivation of medical care was 'sufficiently serious,' and (2) subjectively, that the defendants acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.'" *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006)).

The Court concludes—after review of the petition and transcript—that Zafrin's claims raised in his section 1983 action pertaining to inadequate medical care provided at DOC for his neurological issues and symptoms are identical to the claims fully and fairly litigated and actually determined in his state habeas action.

An issue has been fully and fairly litigated if the party against whom collateral estoppel is asserted had a 'full and fair opportunity' to litigate that issue in the prior proceeding." *Faraday v. Blanchette*, 596 F. Supp. 2d 508, 515 (D. Conn. 2009) (citing *Aetna Cas. & Sur. Co. v. Jones,* 220 Conn. 285, 306 (1991)). Here, the present record shows that Zafrin was afforded a full and fair opportunity to challenge his access to, and provision of, medical treatment at DOC for his neurological issues and symptoms.

An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined." *State v. Joyner*, 255 Conn. 477, 490, 774 A.2d 927 (2001); *Faraday*, 596 F. Supp. 2d at 515 ("An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered.") (internal citation omitted). The issue of whether Zafrin suffered medical deprivations in violation of the Eighth Amendment was clearly determined by the state habeas court, which noted that the record showed he had been afforded medical treatment that meets "constitutional standards."

Accordingly, Zafrin is estopped from relitigating his Eighth Amendment claims in the instant case against Dr. Thurber and against custody defendants Counselors Kelly, Gargano, Torres, and Suarez based on a deprivation of medical care for his alleged serious medical conditions.

### Failure to State A Claim Against Custody Defendants[4]

Defendants maintain that Zafrin has not stated plausible facts to support his claims of Eighth Amendment medical indifference against custody defendants Kelly, Gargano, Torres, Suarez, and Feldott. Defs.' Mem. at 10-12.

It is well established that correctional staff may act with Eighth Amendment deliberate indifference if they intentionally deny or delay access to medical care or intentionally interfere with an inmate's prescribed treatment. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *see Roundtree v. City of New York*, No. 15-CV-8198, 2018 WL 1586473, at *6 (S.D.N.Y. Mar. 28, 2018) ("a plaintiff must prove that [nonmedical] prison personnel intentionally delayed access to

---

[4] To the extent that Zafrin's Eighth Amendment claims arising from his medical deprivation against Kelly, Gargano, Torres, and Suarez are not collaterally estopped, the Court reviews Defendants' arguments for dismissal of such claims.

medical care when the inmate was in extreme pain and has made his medical problems known to the attendant prison personnel or that the inmate suffered a complete denial of medical treatment.") (internal quotation marks omitted). Thus, Zafrin must allege facts to suggest that a defendant acted not merely carelessly or negligently, but with a subjectively reckless state of mind akin to criminal recklessness. *Dunbar v. Dep't of Correction*, No. 3:22-CV-627 (JAM), 2023 WL 143164, at *5 (D. Conn. Jan. 10, 2023).

<u>Kelly, Gargano, Torres, and Suarez</u>

Zafrin alleges that BCC Counselor Kelly, CCI Counselor Gargano, and OCI Counselor Torres assured Zafrin's father that they would convey information about Zafrin's medical issues to the medical unit, and that Counselor Suarez refused, stating it was not her job to do so. Zafrin alleges that he never received any medical care during his six months at BCC; did not receive neurological care after his transfer to CCI; and did receive at least an MRI and met with Dr. Thurber and a neurological specialist after his transfer to Osborn. However, no facts suggest that the custody defendants were aware that their failure to convey Zafrin's medical information to medical staff would result in his medical deprivation; nor do the alleged facts raise an inference that Defendants acted with any intent or recklessness to delay or interfere with Plaintiff's medical care. *See Robinson v. Taylor*, No. 9:16-CV-0285 (BKS) (DJS), 2017 WL 4174795, at *7 (N.D.N.Y. Aug. 24, 2017) ("Non-medical prison personnel engage in deliberate indifference when they intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problem known to the attendant prison personnel.") (internal quotations omitted).

As the Court concludes that Zafrin has not alleged facts to raise an inference that Kelly, Gargano, Torres, or Suarez intentionally or recklessly delayed or interfered with Zafrin's medical treatment by failing to convey medical information about his conditions to the medical unit, Zafrin's Eighth Amendment claims against these Defendants must be dismissed as not plausible.

Officer Feldott

Zafrin alleges that on the first day of his incarceration at OCI, Officer Feldott refused to allow him to go to the medical unit despite his report of feeling lightheaded, disoriented, and drunk. Defendants contend that Zafrin fails to allege facts to support his claim of deliberate indifference by Officer Feldott. Defs.' Mem. at 12. The Court agrees with Defendants.

Zafrin's report that he was feeling lightheaded, dizzy, or drunk is, alone, insufficient to raise an inference that Officer Feldott, a non-medical DOC employee, was alerted to his suffering from an urgent medical condition or extreme pain. *See Robinson*, No. 9:16-CV-0285 (BKS) (DJS), 2017 WL 4174795, at *7 (Plaintiff's allegations that his legs "buckled," that he felt "weak," "lightheaded," and "numb" in his arms and legs were insufficient conditions to support Eighth Amendment claim against custody staff for refusing to Plaintiff's request to notify medical staff); *Roldan v. Kang*, No. 13-CV-6889 (JGK), 2016 WL 4625688, at *4 (S.D.N.Y. Sept. 6, 2016) (noting allegations of disorientation, confusion, or dizzy spells did not describe a sufficiently serious condition).[5]

---

[5] In addition, although the claims against Officer Feldott were not specifically litigated in the state habeas proceeding, the state court's conclusion that Plaintiff received appropriate and adequate medical care precludes any finding of liability as to Officer Feldott. Even if Officer Feldott was deliberately indifferent to Plaintiff 's condition as alleged, his conduct cannot be the basis for any harm to Plaintiff as it has already been determined that Plaintiff did not suffer any constitutional harm And Plaintiff does not plausibly allege any specific harm arising from Officer Feldott's conduct distinct from the insufficiency of his medical care generally.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss [**ECF No. 33**], is **GRANTED**. The Clerk of Court is directed to enter judgment and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 14th day of December 2023.

                                              _/s/ Kari A. Dooley_
                                              KARI A. DOOLEY
                                              UNITED STATES DISTRICT JUDGE